LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
18881 Von Karman Ave., Suite 850
Irvine, CA 92612
Telephone: (949) 825-5200
Facsimile: (949) 313-5001
Cameron@sehatlaw.com

*Attorneys for Plaintiff L.D.*

*Attorneys for Plaintiff Juan Frias*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

L.D., a minor, by and through her guardian *ad litem* Desiree DeLeon, individually and as successor-in-interest to Cesar Frias, deceased; JUAN FRIAS, individually,

Plaintiffs,

vs.

CITY OF LOS ANGELES; ENRIQUE ANZALDO, LEON MAYA; WILLIAM HEARD; RUBEN LOPEZ; JERROLD WERT; JOSEPH MCDOWELL; JUAN GARCIA; VALENTIN MARTINEZ; SYNTHIA LEE; BRUCE ADAM; GUY DOBINE; JOE DOMINGUEZ; JAMES HART; JOSEPH GOOSBY; TIM MCCARTHY; DAIN HURST; ERIC HERNANDEZ; MISSAK DIAR-BEKIRIAN; and DOES 1-10, inclusive,

Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)
2. Fourth Amendment—Excessive Force (42 U.S.C. § 1983)
3. Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)
4. Substantive Due Process (42 U.S.C. § 1983)
5. Municipal Liability—Ratification (42 U.S.C. § 1983)
6. Municipal Liability—Inadequate Training (42 U.S.C. § 1983)
7. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)

**DEMAND FOR JURY TRIAL**

1   **COMPLAINT FOR DAMAGES**

2   COME NOW, Plaintiffs L.D., a minor, by and through her guardian *ad litem*

3   Desiree DeLeon, individually and as successor-in-interest to Cesar Frias, deceased,

4   and JUAN FRIAS, individually, for their Complaint against Defendants City of Los

5   Angeles, Enrique Anzaldo, Leon Maya; William Heard; Ruben Lopez; Jerrold Wert;

6   Joseph McDowell; Juan Garcia; Valentin Martinez; Synthia Lee; Bruce Adam; Guy

7   Dobine; Joe Dominguez; James Hart; Joseph Goosby; Tim McCarthy; Dain Hurst;

8   Eric Hernandez; Missak Diar-Bekirian; and allege as follows:

9

10   **JURISDICTION AND VENUE**

11   1.   This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331

12   and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the

13   United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth

14   Amendments of the United States Constitution.  This Court has supplemental

15   jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §

16   1367(a), because those claims are so related to the federal claims that they form part

17   of the same case or controversy under Article III of the United States Constitution.

18   2.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because

19   Defendants reside in this district and all incidents, events, and occurrences giving

20   rise to this action occurred in this district.

21

22   **INTRODUCTION**

23   3.   This civil rights and state tort action seeks compensatory and punitive

24   damages from Defendants for violating various rights under the United States

25   Constitution and state law in connection with the fatal officer-involved shooting of

26   Plaintiff's father, and son Cesar Frias ("DECEDENT"), on April 5 and 6, 2016.

27

28

COMPLAINT FOR DAMAGES

# **PARTIES**

4.   At all relevant times, Decedent Cesar Frias was an individual residing in the City of Los Angeles, California.

5.   Plaintiff L.D. is a minor individual residing in the City of Los Angeles, California and is the natural daughter of DECEDENT.  L.D. sues both in her individual capacity as the daughter of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60.  L.D. seeks both survival and wrongful death damages under federal and state law.

6.   Plaintiff JUAN FRIAS is an individual residing in the City of Los Angeles, California and is the natural father of DECEDENT.  FRIAS sues in his individual capacity as the father of DECEDENT FRIAS seeks wrongful death damages under federal and state law.

7.   At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD"), and its Metropolitan Division, Special Weapons and Tactics ("SWAT"), and its agents and employees.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LAPD and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, CITY was the employer of Defendants ENRIQUE ANZALDO ("ANZALDO"), LEON MAYA ("MAYA"); WILLIAM HEARD ("HEARD"); RUBEN LOPEZ ("LOPEZ"); JERROLD WERT ("WERT"); JOSEPH MCDOWELL ("MCDOWELL"); JUAN GARCIA ("GARCIA"); VALENTIN MARTINEZ ("MARTINEZ"); SYNTHIA LEE ("LEE"); BRUCE ADAM ("ADAM"); GUY

DOBINE ("DOBINE"); JOE DOMINGUEZ ("DOMINGUEZ"); JAMES HART ("HART"); JOSEPH GOOSBY ("GOOSBY"); TIM MCCARTHY ("MCCARTHY"); DAIN HURST ("HURST"); ERIC HERNANDEZ ("HERNANDEZ"); MISSAK DIAR-BEKIRIAN ("DAIR-BEKIRIAN") (hereinafter collectively referred to as "the individual defendants").

8.     ANZALDO is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, ANZALDO was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, ANZALDO was acting with the complete authority and ratification of his principal, Defendant CITY.

9.     HART is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, HART was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, HART was acting with the complete authority and ratification of his principal, Defendant CITY.

10.     GOOSBY is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, GOOSBY was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, GOOSBY was acting with the complete authority and ratification of his principal, Defendant CITY.

11.     LOPEZ is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, LOPEZ was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, LOPEZ was acting with the complete authority and ratification of his principal, Defendant CITY.

12.     DOBINE is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, DOBINE was acting under color of law within the course and scope of his duties as an officer for the

LAPD and its SWAT team.  Also at all relevant times, DOBINE was acting with the complete authority and ratification of his principal, Defendant CITY.

13.     ADAM is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, ADAM was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, ADAM was acting with the complete authority and ratification of his principal, Defendant CITY.

14.     MAYA is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, MAYA was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, MAYA was acting with the complete authority and ratification of his principal, Defendant CITY.

15.     MCCARTHY is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, MCCARTHY was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, MCCARTHY was acting with the complete authority and ratification of his principal, Defendant CITY.

16.     DOMINGUEZ is an officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, DOMINGUEZ was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, DOMINGUEZ was acting with the complete authority and ratification of his principal, Defendant CITY.

17.     GARCIA is an officer working for the CITY, through his employment with the LAPD.  At all relevant times, GARCIA was acting under color of law within the course and scope of his duties as an officer for the LAPD.  Also at all

relevant times, GARCIA was acting with the complete authority and ratification of his principal, Defendant CITY.

18.     HURST is a supervisory officer working for the CITY, through his employment with the LAPD and its SWAT team.  At all relevant times, HURST was acting under color of law within the course and scope of his duties as an officer for the LAPD and its SWAT team.  Also at all relevant times, HURST was acting with the complete authority and ratification of his principal, Defendant CITY.

19.     HERNANDEZ is an officer working for the CITY, through his employment with the LAPD.  At all relevant times, HERNANDEZ was acting under color of law within the course and scope of his duties as an officer for the LAPD.  Also at all relevant times, HERNANDEZ was acting with the complete authority and ratification of his principal, Defendant CITY.

20.     DAIR-BEKIRIAN is an officer working for the CITY, through his employment with the LAPD.  At all relevant times, DAIR-BEKIRIAN was acting under color of law within the course and scope of his duties as an officer for the LAPD.  Also at all relevant times, DAIR-BEKIRIAN was acting with the complete authority and ratification of his principal, Defendant CITY.

21.     LEE is a supervisory officer and captain working for the CITY, through her employment with the LAPD.  At all relevant times, LEE was acting under color of law within the course and scope of her duties as an officer, captain, and/or incident commander for the LAPD.  Also at all relevant times, LEE was acting with the complete authority and ratification of her principal, Defendant CITY.  At all relevant times, LEE had supervisory authority.

22.     HEARD is a supervisory officer and captain working for the CITY, through his employment with the LAPD.  At all relevant times, HEARD was acting under color of law within the course and scope of his duties as an officer, captain, and/or incident commander for the LAPD.  Also at all relevant times, HEARD was

acting with the complete authority and ratification of his principal, Defendant CITY. At all relevant times, HEARD had supervisory authority.

23. LOPEZ is a supervisory officer and lieutenant working for the CITY, through his employment with the LAPD. At all relevant times, LOPEZ was acting under color of law within the course and scope of his duties as an officer, captain, and/or incident commander for the LAPD. Also at all relevant times, LOPEZ was acting with the complete authority and ratification of his principal, Defendant CITY. At all relevant times, LOPEZ had supervisory authority.

24. WERT is a supervisory officer and captain working for the CITY, through his employment with the LAPD. At all relevant times, WERT was acting under color of law within the course and scope of his duties as a supervisory officer for the LAPD. Also at all relevant times, WERT was acting with the complete authority and ratification of his principal, Defendant CITY. At all relevant times, WERT had supervisory authority.

25. MCDOWELL is a supervisory officer and captain working for the CITY, through his employment with the LAPD. At all relevant times, MCDOWELL was acting under color of law within the course and scope of his duties as an officer and incident commander for the LAPD. Also at all relevant times, MCDOWELL was acting with the complete authority and ratification of his principal, Defendant CITY. At all relevant times, MCDOWELL had supervisory authority.

26. On information and belief, the foregoing individual defendants were residents of the City of Los Angeles.

27. In doing the acts and failing and omitting to act as hereinafter described, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, HERNANDEZ, DAIR-BEKIRIAN, and MCCARTHY were acting on the implied and actual permission and consent of

1  the supervisory officers LOPEZ, MCDOWELL, HEARD, WERT, LEE, and

2  HURST.

3        28.    In doing the acts and failing and omitting to act as hereinafter

4  described, the individual defendants were acting on the implied and actual

5  permission and consent of the CITY.

6        29.    At all times mentioned herein, each and every defendant was the agent

7  of each and every other defendant and had the legal duty to oversee and supervise

8  the hiring, conduct, and employment of each and every defendant.

9        30.    All of the acts complained of herein by Plaintiffs against Defendants

10  were done and performed by said Defendants by and through their authorized

11  agents, servants, and/or employees, all of whom at all relevant times herein were

12  acting within the course, purpose, and scope of said agency, service, and/or

13  employment capacity.  Moreover, Defendants and their agents ratified all of the acts

14  complained of herein.

15        31.    The individual defendants are sued in their individual capacity.

16        32.    On or about July 25, 2016, Plaintiff L.D. filed a comprehensive and

17  timely claim for damages with the City of Los Angeles pursuant to applicable

18  sections of the California Government Code.  On August 11, 2016, the City denied

19  said claim.

20

21                **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22        33.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

23  through 32 of this Complaint with the same force and effect as if fully set forth

24  herein.

25        34.    On April 5, 2016, officers working for the CITY responded to

26  DECEDENT's residence, located in the 4700 block of Lakeside Street in Sylmar,

27  California. The first group of officers arrived at approximately 7:50 p.m. on that

28  date.  The officers were responding to a call regarding a man (DECEDENT) with a

mental illness wherein DECEDENT's family members advised Dispatch that the family needed help taking DECEDENT to the hospital.

35. HERNANDEZ and DIAR-BEKIRIAN were aware that DECEDENT suffered from a mental illness prior to engaging with DECEDENT. HERNANDEZ and DIAR-BEKIRIAN failed to remove DECEDENT'S family members from the general area in which DECEDENT was in, and allowed those family members to make physical contact with DECEDENT. HERNANDEZ and DIAR-BEKIRIAN'S lack of control of the environment led to the Joel Hernandez, DECEDENT'S cousin, and Alberto Fias, DECEDENT'S brother, attempting to communicate with the DECEDENT simultaneously to and contradictory to the communication between the Officers and the DECEDENT.

36. HERNANDEZ and DIAR-BEKIRIAN allowed Alberto Fias to keep DECEDENT inside the house when DECEDENT made an effort to leave the residence. HERNANDEZ and DIAR-BEKIRIAN further allowed Alberto Fias to physically restrain DECEDENT in their presence without admonishment, thereby escalating the situation.

37. Then HERNANDEZ and DIAR-BEKIRIAN physically restrained the DECEDENT

38. Without any provocation, HERNANDEZ discharged his TASER at DECEDENT approximately two times. DIAR-BEKIRIAN attempted to discharge his TASER at DECEDENT but the TASER malfunctioned. In response to the unreasonable detention of DECEDENT within the residence, and the physical force used on him preventing him from calmly leaving the residence, DECEDENT then entered his bedroom and closed the door.

39. At approximately 9:25 p.m., Defendants HEARD, WERT, and MCDOWELL, who are supervisory officers working for the CITY and the LAPD, established a plan to attempt entry into DECEDENT's bedroom notwithstanding that DECEDENT posed no immediate threat of death or serious bodily injury to any

person. At this time, officers working for the CITY had already commanded DECEDENT's family members to exit the residence.

40.     At approximately 10:00 p.m., Defendant GARCIA, at the direction of Defendant WERT, discharged approximately six beanbag rounds from his beanbag shotgun at DECEDENT through a hole the officers created in DECEDENT's bedroom door, striking DECEDENT and thereby using excessive force against him.

41.     Also at approximately 10:00 p.m., Defendant MARTINEZ discharged one beanbag round at DECEDENT and then fired approximately three beanbag rounds from his beanbag shotgun at DECEDENT, striking DECEDENT and thereby using excessive force against him.

42.     At approximately 12:15 a.m., Officer Gastelo, a CNT negotiator, was directed to cease negotiation efforts.  The cessation of negotiation efforts in this situation was a contributing factor in the sustained unreasonable detention, and a cause in the use of excessive force against DECEDENT.

43.     Also at approximately 1:29 a.m. on April 6, 2016, Defendant LEE directed Defendant ADAM to deploy tear gas into DECEDENT's bedroom and otherwise approved and condoned the use of tear gas. Defendant ADAM deployed tear gas into DECEDENT's bedroom. As a result of the tear gas being deployed into DECEDENT's bedroom, DECEDENT exited the bedroom through the bedroom window. The use of tear gas in this situation was a use of excessive and unreasonable force

44.     At approximately 1:51 a.m., Defendant DOBINE fired approximately six beanbag rounds at DECEDENT from his beanbag shotgun, striking DECEDENT and thereby using excessive force against him.

45.     Also at approximately 1:51 a.m., Defendant DOMINGUEZ fired approximately three sponge rounds from a 40MM weapon at DECEDENT and also discharged his TASER at DECEDENT for one 13-second round and an additional 7-second round, thereby using excessive force against him.

46.     Also at approximately 1:51 a.m., Defendant HART fired approximately three beanbag rounds at DECEDENT from his beanbag shotgun, striking DECEDENT and thereby using excessive force against him.

47.     At approximately 1:52 a.m., ANZALDO shot DECEDENT without warning, thereby further using excessive force against him.  DECEDENT did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shooting.

48.     After being shot, DECEDENT was bleeding profusely and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely permit medical personnel to treat DECEDENT.  Rather, Defendant MCCARTHY kicked DECEDENT approximately two times after he had already been shot and was in obvious need of critical medical attention, thereby aggravating his injuries and using excessive force against him.

49.     Also after DECEDENT had been shot, Defendant MAYA discharged his TASER at DECEDENT for approximately twelve cycles, notwithstanding that DECEDENT was bleeding profusely and in obvious and critical need of emergency medical care and treatment. Defendant MAYA thus aggravated DECEDENT's injuries and used excessive and unreasonable force against him.

50.     Also after DECEDENT had been shot, Defendant GOOSBY applied his TASER to DECEDENT approximately twice, thereby aggravating his injuries and using excessive force against him.

51.     Also after DECEDENT had been shot, officers handcuffed DECEDENT and Defendant ADAM applied a hobble restraint device to DECEDENT.

52.     The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering, and was a contributing cause of DECEDENT's serious injuries.

53.     The use of force against DECEDENT by the individual defendants was excessive and objectively unreasonable under the circumstances, especially because DECEDENT was mentally ill and did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shooting.

54.     Plaintiff L.D. would have been dependent on DECEDENT, her father, to some extent, for the necessities of life.

55.     Plaintiff L.D. is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural daughter of DECEDENT.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)

(By Plaintiff L.D. against Defendants HERNANDEZ, DIAR-BEKIRIAN ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST)

56.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 55 of this Complaint with the same force and effect as if fully set forth herein.

57.     Defendants detained DECEDENT without reasonable suspicion and arrested him without probable cause.

58.     When Defendants HERNANDEZ and DIAR-BEKIRIAN physically restrained DECEDENT and pointed Tasers at him, they violated DECEDENT's right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

59.     When Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, and GOOSBY pointed their weapons at DECEDENT, deployed gas against him, and used force against him at the direction

of Defendants LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST, they violated DECEDENT's right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

60.   Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants HERNANDEZ and DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST.

61.   As a result of their misconduct, Defendants HERNANDEZ and DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

62.   Plaintiff L.D. brings this claim as a successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.  Plaintiffs also seek attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment —Excessive Force (42 U.S.C. § 1983)

(By Plaintiff L.D. against Defendants HERNANDEZ, DIAR-BEKIRIAN ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST)

63.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 62 of this Complaint with the same force and effect as if fully set forth herein.

64.    Defendants deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

65.    Defendant HERNANDEZ and DIAR-BEKIRIAN used excessive force against DECEDENT when they restrained him. HERNANDEZ used excessive force against DECEDENT when he used a Taser against him.

66.    Defendant ANZALDO used excessive force against DECEDENT when he shot him without warning. ANZALDO's gunshot caused DECEDENT's death.

67.    Defendants MAYA, GARCIA, MARTINEZ, DOBINE, DOMINGUEZ, HART, and GOOSBY used excessive force against DECEDENT when they deployed numerous beanbag rounds at him with beanbag shotguns and discharged TASERs at DECEDENT numerous times, including after DECEDENT had already been shot with a lethal weapon.

68.    Defendants LEE and ADAM used excessive force against DECEDENT when they formulated and executed the tactical plan to deploy tear gas into DECEDENT's bedroom. ADAM further used excessive force when he applied a hobble restraint device to DECEDENT after he had been shot with a lethal weapon.

69.     MCCARTHY used excessive force against DECEDENT when he kicked DECEDENT after DECEDENT had already been shot with a lethal weapon.

70.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

71.     The conduct of the individual defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to the individual defendants.

72.     The use of force was excessive and unreasonable, especially because DECEDENT was mentally ill (a fact known to the involved officers at the time of the incident) and posed no immediate threat of death or serious bodily injury at the time of the shooting.  Further, Defendants' use of force violated their training and standard police officer training.

73.     As a result of their misconduct, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, HERNANDEZ, DIAR-BEKIRIAN, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the use of force, or because they failed to intervene to prevent these violations.

74.     Plaintiff L.D. brings this claim as a successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.  Plaintiffs also seek attorney's fees under this claim.

**THIRD CLAIM FOR RELIEF**

**Fourth Amendment —Denial of Medical Care (42 U.S.C. § 1983)**

(By Plaintiff L.D. against Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST)

75.  Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

76.  The denial of medical care by Defendants deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

77.  As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

78.  Defendants knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

79.  Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the individual defendants.

80.  As a result of their misconduct, Defendants ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

81.     Plaintiff L.D. brings this claim as a successor-in-interest to the DECEDENT, and seeks both survival and wrongful death damages for the violation of DECEDENT's rights.  Plaintiffs also seek attorney's fees under this claim.

## FOURTH CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(By all Plaintiffs against Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST)

82.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 81 of this Complaint with the same force and effect as if fully set forth herein.

83.     Plaintiff L.D. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

84.     Plaintiff FRIAS had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in FRIAS' familial relationship with his son, DECEDENT.

85.     The aforementioned actions of Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional

-16-

rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

86.     As a direct and proximate result of these actions, DECEDENT experienced pain and suffering and eventually died.  Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT.

87.     As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

88.     As a result of their misconduct, Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, use of excessive force, and denial of medical care or because they failed to intervene to prevent these violations.

89.     Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

90.     Plaintiff L.D. brings this claim individually and seeks wrongful death damages under this claim. Plaintiff FRIAS brings this claim individually and seeks wrongful death damages. Plaintiffs also seek attorneys' fees under this claim.

1

2 **FIFTH CLAIM FOR RELIEF**

3 **Municipal Liability – Ratification (42 U.S.C. § 1983)**

4 (By Plaintiff L.D. against Defendants CITY, LOPEZ, LEE, and HURST)

5 91.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

6 through 90 of this Complaint with the same force and effect as if fully set forth

7 herein.

8 92.     Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA,

9 GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY,

10 MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, HURST,

11 HERNANDEZ, and DIAR-BEKIRIAN acted under color of law.

12 93.     The acts of the individual defendants deprived DECEDENT and

13 Plaintiffs of their particular rights under the United States Constitution.

14 94.     Upon information and belief, a final policymaker, acting under color of

15 law, who had final policymaking authority concerning the acts of the individual

16 defendants, ratified the acts of the defendants' acts and the bases for them. Upon

17 information and belief, the final policymaker knew of and specifically approved of

18 the individual defendants' acts.

19 95.     Upon information and belief, a final policymaker has determined (or

20 will determine) that the acts of the individual defendants were "within policy."

21 96.     By reason of the aforementioned acts and omissions, Plaintiff L.D.

22 suffered loss of the love, companionship, affection, comfort, care, society, training,

23 guidance, and support of DECEDENT.  The aforementioned acts and omissions also

24 caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

25 97.     Accordingly, Defendants CITY, LOPEZ, LEE, and HURST each are

26 liable to Plaintiff L.D. for compensatory damages under 42 U.S.C. § 1983.

27

28

COMPLAINT FOR DAMAGES

98.     Plaintiff L.D. brings this claim as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim. Plaintiff L.D. also seeks punitive damages and attorney's fees under this claim.

### SIXTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(By Plaintiff L.D. against Defendants CITY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST)

99.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 98 of this Complaint with the same force and effect as if fully set forth herein.

100.    Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, HURST, HERNANDEZ, and DIAR-BEKIRIAN acted under color of law.

101.    The acts of the individual defendants deprived DECEDENT and Plaintiff of their particular rights under the United States Constitution.

102.    The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal. This includes training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly force.

103.    Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly and non-deadly force.

104.    The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiff's rights by the individual defendants; that is, Defendants'

failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

105.   On information and belief, CITY failed to train the individual defendants properly and adequately, including training with respect to tactics, handling situations with the mentally ill, and the use of force, including deadly and non-deadly force.

106.   By reason of the aforementioned acts and omissions, Plaintiff L.D. has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

107.   The following are only a few examples of continued misconduct by officers working for Defendant CITY.  These examples demonstrate a failure to train with regard to handling situations with mentally ill individuals and unarmed individuals:

    a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx)), the CITY argued that the use deadly force against Mr. Contreras by LAPD officers was reasonable; a unanimous jury disagreed, awarding Mr. Contreras $5,700,000 after finding that the involved officers used excessive and unreasonable force when they shot an unarmed Mr. Contreras.  Police reports confirmed that Mr. Contreras was unarmed.  In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

    b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, the CITY argued that the involved LAPD officers' use of force was reasonable; a unanimous jury disagreed, awarding the plaintiffs a total of $3,215,000 after finding that the involved officers' use of force was excessive and unreasonable.  In that case, the involved officers were

not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

 c) In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, the family of an unarmed man (David Martinez) who was shot and killed by LAPD Rampart officers alleged that the force used by the officers was excessive and unreasonable.  Police reports confirmed that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

 d) In *Wysocki v. City of Los Angeles*, case number 2:15−cv−09587−PA−GJS, currently pending in the United States District Court for the Central District of California, the mother of a mentally ill veteran (Michael Mears) who was killed by LAPD officers after the officers used Tasers, pepper spray, and police batons against him at his own residence alleges that the force used by the officers was excessive and unreasonable.  Police reports confirm that Mr. Mears was unarmed during the incident. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

108. Accordingly, Defendants CITY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST each are liable to Plaintiff L.D. for compensatory damages under 42 U.S.C. § 1983.

109. Plaintiff L.D. brings this claim as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim. Plaintiff L.D. also seeks punitive damages and attorney fees under this claim.

COMPLAINT FOR DAMAGES

**SEVENTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By Plaintiff L.D. against Defendants CITY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST)

110.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 109 of this Complaint with the same force and effect as if fully set forth herein.

111.   The individual defendants, including HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, MCCARTHY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, HURST, HERNANDEZ, acted under color of law.

112.   The individual defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

113.   On information and belief, the individual defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

114.   Defendants CITY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST, together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)   Using excessive force, including excessive deadly and non-deadly force;

(b)   Providing inadequate training regarding the use of deadly force;

(c)   Employing and retaining as police officers individuals such as Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA, GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ, HART, GOOSBY, and MCCARTHY, whom Defendant CITY at all times material herein knew or reasonably

1               should have known had dangerous propensities for abusing their

2               authority and for using excessive force;

3       (d)    Inadequately supervising, training, controlling, assigning, and

4               disciplining CITY officers, and other personnel, including

5               Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO,

6               MAYA, GARCIA, MARTINEZ, ADAM, DOBINE,

7               DOMINGUEZ, HART, GOOSBY, MCCARTHY, whom

8               Defendant CITY knew or in the exercise of reasonable care

9               should have known had the aforementioned propensities and

10              character traits;

11      (e)    Maintaining grossly inadequate procedures for reporting,

12              supervising, investigating, reviewing, disciplining and

13              controlling misconduct by CITY officers, Defendants

14              HERNANDEZ, DIAR-BEKIRIAN, ANZALDO, MAYA,

15              GARCIA, MARTINEZ, ADAM, DOBINE, DOMINGUEZ,

16              HART, GOOSBY, and MCCARTHY;

17      (f)    Failing to adequately discipline CITY police officers, including

18              Defendants HERNANDEZ, DIAR-BEKIRIAN, ANZALDO,

19              MAYA, GARCIA, MARTINEZ, ADAM, DOBINE,

20              DOMINGUEZ, HART, GOOSBY, and MCCARTHY, for the

21              above-referenced categories of misconduct, including "slaps on

22              the wrist," discipline that is so slight as to be out of proportion to

23              the magnitude of the misconduct, and other inadequate discipline

24              that is tantamount to encouraging misconduct;

25      (g)    Announcing that unjustified shootings are "within policy,"

26              including shootings that were later determined in court to be

27              unconstitutional;

28

(h)   Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing;

(j)   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people;

(k)   Providing inadequate training regarding handling situations with mentally ill individuals.

115.   By reason of the aforementioned acts and omissions, Plaintiff L.D. has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

116.   Defendants CITY, LOPEZ, MCDOWELL, HEARD, WERT, LEE, and HURST, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions

1  thereby ratified such policies.  Said defendants also acted with deliberate

2  indifference to the foreseeable effects and consequences of these policies with

3  respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals

4  similarly situated.

5       117.   By perpetrating, sanctioning, tolerating and ratifying the outrageous

6  conduct and other wrongful acts, LOPEZ, MCDOWELL, HEARD, WERT, LEE,

7  and HURST acted with intentional, reckless, and callous disregard for the life of

8  DECEDENT and for DECEDENT's and Plaintiff's constitutional rights.

9  Furthermore, the policies, practices, and customs implemented, maintained, and still

10  tolerated by Defendants CITY and LOPEZ, MCDOWELL, HEARD, WERT, LEE,

11  and HURST were affirmatively linked to and were a significantly influential force

12  behind the injuries of DECEDENT and Plaintiffs.

13       118.   The following are only a few examples of continued misconduct by

14  officers working for Defendant CITY.  These examples demonstrate an

15  unconstitutional custom, policy, and practice of using deadly force against unarmed

16  civilians, and ratifying that use of deadly force and/or finding the use of deadly

17  force to be justified or "within policy":

18          a)  In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW

19           (SHx)), the CITY argued that the use deadly force against Mr.

20           Contreras by LAPD officers was reasonable; a unanimous jury

21           disagreed, awarding Mr. Contreras $5,700,000 after finding that the

22           involved officers used excessive and unreasonable force when they shot

23           an unarmed Mr. Contreras.  Police reports confirmed that Mr. Contreras

24           was unarmed.  In that case, the involved officers were not disciplined

25           or retrained for their use of deadly force, and the CITY found that the

26           shooting was justified and did not violate any CITY policy.

27          b)  In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA,

28           the CITY argued that the involved LAPD officers' use of force was

1    reasonable; a unanimous jury disagreed, awarding the plaintiffs a total
2    of $3,215,000 after finding that the involved officers' use of force was
3    excessive and unreasonable.  In that case, the involved officers were
4    not disciplined or retrained for their use of deadly force, and the CITY
5    found that the shooting was justified and did not violate any CITY
6    policy.
7         c)  In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-
8             JAK-E, the family of an unarmed man (David Martinez) who was shot
9             and killed by LAPD Rampart officers alleged that the force used by the
10            officers was excessive and unreasonable.  Police reports confirmed that
11            Mr. Martinez was unarmed at the time of the shooting. In that case, the
12            involved officers were not disciplined or retrained for their use of
13            deadly force, and the CITY found that the shooting was justified and
14            did not violate any CITY policy.
15        d)  In *Wysocki v. City of Los Angeles*, case number
16            2:15−cv−09587−PA−GJS, currently pending in the United States
17            District Court for the Central District of California, the mother of a
18            mentally ill veteran (Michael Mears) who was killed by LAPD officers
19            after the officers used Tasers, pepper spray, and police batons against
20            him at his own residence alleges that the force used by the officers was
21            excessive and unreasonable.  Police reports confirm that Mr. Mears was
22            unarmed during the incident. In that case, the involved officers were
23            not disciplined or retrained for their use of deadly force, and the CITY
24            found that the shooting was justified and did not violate any CITY
25            policy.
26    119.  Accordingly, Defendants CITY, LOPEZ, MCDOWELL, HEARD,
27    WERT, LEE, and HURST each are liable to Plaintiffs for compensatory damages
28    under 42 U.S.C. § 1983.

-26-

120.   Plaintiff L.D. brings this claim individually and as a successor-in-interest to DECEDENT, and seeks both survival and wrongful death damages under this claim. Plaintiff L.D. also seeks punitive damages and attorneys' fees under this claim.

COMPLAINT FOR DAMAGES

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff L.D., by and through her guardian *ad litem* Desiree DeLeon, and Plaintiff Juan Frias, request entry of judgment in their favor and against Defendants City of Los Angeles, Enrique Anzaldo, Leon Maya; William Heard; Ruben Lopez; Jerrold Wert; Joseph McDowell; Juan Garcia; Valentin Martinez; Synthia Lee; Bruce Adam; Guy Dobine; Joe Dominguez; James Hart; Joseph Goosby; Tim McCarthy; Eric Hernandez; Missak Diar-Bekirian; Dain Hurst, and Does 1-10, inclusive, as follows: (1) For compensatory damages in whatever other amount may be proven at trial, including both survival damages and wrongful death damages under federal and state law; (2) For funeral and burial expenses, and loss of financial support; (3) For punitive damages against the individual defendants in an amount to be proven at trial; (4) For statutory damages; (5) For interest; (6) For reasonable attorneys' fees, including litigation expenses; (7) For costs of suit; and (8) For such further other relief as the Court may deem just, proper, and appropriate.

DATED: April 4, 2018

LAW OFFICES OF DALE K. GALIPO
LAW OFFICES OF TODD D. THIBODO

By /s/ Dale K. Galipo
_____
Dale K. Galipo
Todd D. Thibodo
Attorneys for Plaintiff L.D.

DATED: April 4, 2018

SEHAT LAW FIRM PLC

By s/ Cameron Sehat
_____
Cameron Sehat
Attorneys for Plaintiff Juan Frias

COMPLAINT FOR DAMAGES

1

**DEMAND FOR JURY TRIAL**

2      Plaintiffs hereby demand a trial by jury.

3

4   DATED:  April 4, 2018          LAW OFFICES OF DALE K. GALIPO
                                   LAW OFFICES OF TODD D. THIBODO
5

6
                               By /s/ Dale K. Galipo
7                                 _____
                                  Dale K. Galipo
8                                 Todd D. Thibodo
                                  Attorneys for Plaintiff L.D.
9

10  DATED: April 4, 2018          SEHAT LAW FIRM PLC

11

12                             By /s/ Cameron Sehat
                                  _____
13                                Cameron Sehat
                                  Attorneys for Plaintiff Juan Frias

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28